UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

ABEL PUENTE,

      Petitioner,

v.                     Case No: 2:15-cv-681-FtM-29MRM

FLORIDA ATTORNEY GENERAL and
SECRETARY, DOC,

      Respondents.[1]

_____

**<u>OPINION AND ORDER</u>**

This matter comes before the Court on a petition for habeas corpus relief filed pursuant to 28 U.S.C. § 2254 by Abel Puente ("Petitioner" or "Puente"), a prisoner of the Florida Department of Corrections (Doc. 1, filed November 2, 2015). Puente, proceeding pro se, attacks the convictions and sentences entered against him by the Twentieth Judicial Circuit Court in Collier County, Florida for sexual battery and simple battery. <u>Id.</u> Respondent filed a response to the petition (Doc. 19). Puente filed a reply (Doc. 24), and the matter is now ripe for review.

---

[1] When the petitioner is incarcerated and challenges his present physical confinement "the proper respondent is the warden of the facility where the prisoner is being held, not the Attorney General or some other remote supervisory official." <u>Rumsfeld v. Padilla</u>, 542 U.S. 426, 436 (2004) (citations omitted). In Florida, the proper respondent in this action is the Secretary of the Florida Department of Corrections. Therefore, the Florida Attorney General will be dismissed from this action.

Upon due consideration of the pleadings and the state court record, the Court concludes that each claim must be dismissed or denied.   Because the petition is resolved on the record, an evidentiary hearing is not warranted.   See <u>Schriro v. Landrigan</u>, 550 U.S. 465, 474 (2007) (if the record refutes the factual allegations in the petition or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing).

## I.   <u>Background and Procedural History</u>[2]

On May 5, 2009, Puente was charged by amended information with two counts of sexual battery, in violation of Florida Statute § 794.011(5) (Ex. 1).  A jury found Puente guilty of one count of sexual battery (count one) and the lesser included offense of battery (count two).  <u>Id.</u>  The trial court sentenced Puente to a total of fifteen years in prison.  <u>Id.</u>  Florida's Second District Court of Appeal affirmed Puente's convictions and sentences without a written opinion (Ex. 2); <u>Puente v. State</u>, 70 So. 3d 594 (Fla. 2d DCA 2011).

On July 11, 2012, Puente filed a motion for post-conviction relief pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure ("Rule 3.850 motion") (Ex. 5).   On April 8, 2013, the

---

[2] Unless otherwise indicated, citations to exhibits are to those filed by Respondent on May 20, 2016 (Doc. 20; Doc. 21). Citations to the trial transcript, located at exhibit four, will be cited as (T. at ___).

post-conviction court struck grounds 5(i) and 5(j) of Puente's motion (Ex. 6).   On May 16, 2014, the post-conviction court summarily denied the remaining claims in Puente's Rule 3.850 motion (Ex. 7).   Florida's Second District Court of Appeal affirmed. Puente v. State, 164 So. 3d 9 (Fla. 2d DCA 2014).

Puente filed the instant petition on October 29, 2015 (Doc. 1).

## II.   Legal Standards

### a.   The Antiterrorism Effective Death Penalty Act ("AEDPA")

Pursuant to the AEDPA, federal habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

> (1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).   This standard is both mandatory and difficult to meet.   White v. Woodall, 134 S. Ct. 1697, 1702 (2014).   Notably, a state court's violation of state law is not sufficient to show that a petitioner is in custody in violation of the "Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); Wilson v. Corcoran, 562 U.S. 1, 16 (2010).

"Clearly established federal law" consists of the governing legal principles, rather than the *dicta*, set forth in the decisions of the United States Supreme Court at the time the state court issued its decision. White, 134 S. Ct. at 1702; Carey v. Musladin, 549 U.S. 70, 74 (2006) (citing Williams v. Taylor, 529 U.S. 362, 412 (2000)).  That said, the Supreme Court has also explained that "the lack of a Supreme Court decision on nearly identical facts does not by itself mean that there is no clearly established federal law, since 'a general standard' from [the Supreme Court's] cases can supply such law." Marshall v. Rodgers, 133 S. Ct. 1446, 1449 (2013) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)).  State courts "must reasonably apply the rules 'squarely established' by [the Supreme] Court's holdings to the facts of each case." White, 134 S. Ct. at 1706 (quoting Knowles v. Mirzayance, 556 U.S. 111, 122 (2009)).

Even if there is clearly established federal law on point, habeas relief is only appropriate if the state court decision was "contrary to, or an unreasonable application of," that federal law. 29 U.S.C. § 2254(d)(1).  A decision is "contrary to" clearly established federal law if the state court either: (1) applied a rule that contradicts the governing law set forth by Supreme Court case law; or (2) reached a different result from the Supreme Court when faced with materially indistinguishable facts. Ward v. Hall,

592 F.3d 1144, 1155 (11th Cir. 2010); Mitchell v. Esparza, 540 U.S. 12, 16 (2003).

A state court decision involves an "unreasonable application" of the Supreme Court's precedents if the state court correctly identifies the governing legal principle, but applies it to the facts of the petitioner's case in an objectively unreasonable manner, Brown v. Payton, 544 U.S. 133, 134 (2005); Bottoson v. Moore, 234 F.3d 526, 531 (11th Cir. 2000), or "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." Bottoson, 234 F.3d at 531 (quoting Williams, 529 U.S. at 406). The petitioner must show that the state court's ruling was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." White, 134 S. Ct. at 1702 (quoting Harrington v. Richter, 562 U.S. 86 (2011)). Moreover, "it is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by [the Supreme] Court." Knowles, 556 U.S. at 122.

Notably, even when the opinion of a lower state post-conviction court contains flawed reasoning, the federal court must

give the <u>last</u> state court to adjudicate the prisoner's claim on the merits "the benefit of the doubt." <u>Wilson v. Warden, Ga. Diagnostic Prison</u>, 834 F.3d 1227, 1235 (11th Cir. 2016), <u>cert. granted Wilson v. Sellers</u>, 137 S. Ct. 1203 (Feb. 27, 2017). A state court's summary rejection of a claim, even without explanation, qualifies as an adjudication on the merits which warrants deference. <u>Ferguson v. Culliver</u>, 527 F.3d 1144, 1146 (11th Cir. 2008). Therefore, to determine which theories could have supported the state appellate court's decision, the federal habeas court may look to a state post-conviction court's previous opinion as one example of a reasonable application of law or determination of fact; however, the federal court is not limited to assessing the reasoning of the lower court. <u>Wilson</u>, 834 F.3d at 1239.

Finally, when reviewing a claim under § 2254(d), a federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct[,]" and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 340 (2003) ("a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented

in the state-court proceeding") (dictum); Burt v. Titlow, 134 S. Ct. 10, 15-16 (2013) (same).

### b.  Ineffective Assistance of Counsel

In Strickland v. Washington, the Supreme Court established a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance. 466 U.S. 668, 687-88 (1984). A petitioner must establish that counsel's performance was deficient and fell below an objective standard of reasonableness and that the deficient performance prejudiced the defense. Id. This is a "doubly deferential" standard of review that gives both the state court and the petitioner's attorney the benefit of the doubt. Burt, 134 S. Ct. at 13 (citing Cullen v. Pinholster, 563 U.S. 170 (2011)).

The focus of inquiry under Strickland's performance prong is "reasonableness under prevailing professional norms." Strickland, 466 U.S. at 688-89. In reviewing counsel's performance, a court must adhere to a strong presumption that "counsel's conduct falls within the wide range of reasonable professional assistance[.]" Id. at 689. Indeed, the petitioner bears the heavy burden to "prove, by a preponderance of the evidence, that counsel's performance was unreasonable[.]" Jones v. Campbell, 436 F.3d 1285, 1293 (11th Cir. 2006). A court must "judge the reasonableness of

counsel's conduct on the facts of the particular case, viewed as of the time of counsel's conduct," applying a "highly deferential" level of judicial scrutiny. Roe v. Flores-Ortega, 528 U.S. 470, 477 (2000) (quoting Strickland, 466 U.S. at 690).

As to the prejudice prong of the Strickland standard, Petitioner's burden to demonstrate prejudice is high. Wellington v. Moore, 314 F.3d 1256, 1260 (11th Cir. 2002).   Prejudice "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 687.   That is, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. At 694.   A reasonable probability is "a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694.

### c.   Exhaustion and Procedural Default

The AEDPA precludes federal courts, absent exceptional circumstances, from granting habeas relief unless a petitioner has exhausted all means of available relief under state law. Exhaustion of state remedies requires that the state prisoner "fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights[.]" Duncan v. Henry,

513 U.S. 364, 365 (1995) (citing Picard v. Connor, 404 U.S. 270, 275-76 (1971)).   The petitioner must apprise the state court of the federal constitutional issue, not just the underlying facts of the claim or a similar state law claim.   Snowden v. Singletary, 135 F.3d 732 (11th Cir. 1998).

In addition, a federal habeas court is precluded from considering claims that are not exhausted and would clearly be barred if returned to state court. Coleman v. Thompson, 501 U.S. 722, 735 n.1 (1991) (if a petitioner has failed to exhaust state remedies and the state court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred, there is a procedural default for federal habeas purposes regardless of the decision of the last state court to which the petitioner actually presented his claims).

Finally, a federal court must dismiss those claims or portions of claims that have been denied on adequate and independent procedural grounds under state law. Coleman, 501 U.S. at 750.   If a petitioner attempts to raise a claim in a manner not permitted by state procedural rules, he is barred from pursuing the same claim in federal court. Alderman v. Zant, 22 F.3d 1541, 1549 (11th Cir. 1994).

A petitioner can avoid the application of procedural default by establishing objective cause for failing to properly raise the claim in state court and actual prejudice from the alleged constitutional violation. Spencer v. Sec'y, Dep't of Corr., 609 F.3d 1170, 1179-80 (11th Cir. 2010). To show cause, a petitioner "must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in state court." Wright v. Hopper, 169 F.3d 695, 703 (11th Cir. 1999); Murray v. Carrier, 477 U.S. 478 (1986). To show prejudice, a petitioner must demonstrate there is a reasonable probability the outcome of the proceeding would have been different. Crawford v. Head, 311 F.3d 1288, 1327-28 (11th Cir. 2002).

A second exception, known as the fundamental miscarriage of justice, only occurs in an extraordinary case, where a "constitutional violation has probably resulted in the conviction of one who is actually innocent[.]" Murray v. Carrier, 477 U.S. 478, 479-80 (1986). Actual innocence means factual innocence, not legal insufficiency. Bousley v. United States, 523 U.S. 614, 623 (1998). To meet this standard, a petitioner must "show that it is more likely than not that no reasonable juror would have convicted him" of the underlying offense. Schlup v. Delo, 513 U.S. 298, 327 (1995). "To be credible, a claim of actual innocence must be based on [new] reliable evidence not presented at trial."

Calderon v. Thompson, 523 U.S. 538, 559 (1998) (quoting Schlup,

513 U.S. at 324).

### III. Analysis

In his brief on direct appeal, Puente summarized the victim's

description of the incident that led to his conviction and

sentences as follows:

> The [victim and Puente] were married in 2006.
> According to [the victim], Puente moved out of
> their trailer approximately one week prior to
> the date of the alleged offense and moved in
> with his parents.  [The victim] testified that
> Puente came over on the night of the offense
> to visit their two children and as he was
> leaving, one child began crying because he
> wanted to go with his dad.  Puente came back
> inside and spoke to the child, and when he
> left again, the child began to cry.  [The
> victim] testified that she then locked the
> door and would not let Puente back inside, but
> he broke in through the front door.
>
> [The victim] said that Puente was upset and
> screaming at her, he smelled of alcohol, and
> in front of their two small children, he
> pushed her and grabbed her by the hair.
> According to [the victim], Puente told her
> that he wanted to have sex with her, threw her
> down face-first onto the bed, pulled her
> shorts down and inserted his penis into her
> anus against her will.  [The victim] testified
> that while this was happening, their youngest
> child was hitting Puente with the [television]
> remote control and the oldest child was
> yelling at him to stop hitting their mother.
>
> [The victim] testified that in order to get
> away from the children, she told Puente that
> she wanted to go into the bathroom and have
> sex there.  According to [the victim], she

closed the bathroom door and Puente told her
he wanted her to perform oral sex on him, he
grabbed her by the hair and made her put his
penis inside her mouth against her will. [The
victim] testified that Puente penetrated her
anus with his penis once again while inside
the bathroom.

When she heard the bathroom doorknob rattle,
[the victim] told Puente that one of their
children was leaving which made Puente leave
the bathroom. [The victim] testified that she
then attempted to crawl out of the bathroom
window, while her pants were still off, and
she yelled for help. According to [the
victim], Puente saw her trying to get out of
the window and he pulled her back inside by
the feet and hair. [The victim's] father, who
lived in the trailer with [the victim], came
to investigate and said he was going to call
the police. After that, Puente left the
trailer.

(Ex. 2 at 4-5) (internal citations to the record omitted).

Puente raises a total of thirteen claims and sub-claims in
his petition. He asserts that: (1) the trial court erred when it
denied his motion to appoint different defense counsel (Claim One);
(2) the trial court erred when it allowed a nurse practitioner to
testify about the victim's description of the sexual assault (Claim
Two); (3) the prosecutor's improper comments during closing
argument denied him of a fair trial (Claim Three); (4) the trial
court erred by excluding testimony from Puente's former girlfriend
that he could not get an erection when drunk (Claim Four); (5) the
state post-conviction court erred when it denied approximately

sixteen of his Rule 3.850 claims as procedurally barred because they should have been raised on direct appeal (Doc. Five); (6) Defense counsel ("Counsel") erred by conceding Puente's guilt to the lesser-included offense of simple battery (Claim 6(a)); (7) Counsel was ineffective for failing to object to the prosecutor's summary of the evidence during closing argument (Claim 6(b)); (8) Counsel was ineffective for failing to properly impeach the victim (Claim 6(c)); (9) Counsel was constitutionally ineffective for failing to object to the use of translators during the investigation (Claim 6(d)); (10) Counsel should have objected to, or made a motion to exclude, the State's argument on his consciousness of guilt in closing (Claim 6(e)); (11) Counsel should have moved to exclude Nurse Diana Hansell's testimony regarding the victim's rectal dilation because Hansell was not an expert on rectal dilation and should not have been permitted to testify to her observation of it (Claim 6(f)); (12) Counsel was constitutionally ineffective for asking Detective Maran if the victim's injuries were consistent with her getting stuck in the window when she tried to escape (Claim 6(g)); and (13) a conflict of interest existed between Puente and Counsel throughout the trial (Claim Seven).

Each of the claims will be addressed separately.

### a.   Claim One

Puente asserts that the trial court erred when it denied his motion to dismiss Counsel and appoint different counsel (Doc. 1 at 5). Specifically, Puente argues that the trial court used "erroneous Faretta and Nelson[3] standards where neither applied [and] also unreasonably ruled Petitioner was not indigent[.]" Id. Puente cites Bell v. Cone, 535 U.S. 685 (2002); Rose v. Clark, 478 U.S. 570 (1986); Brecht v. Abrahamson, 507 U.S. 619 (1993); United States v. Gonzalez—Lopez, 126 S. Ct. 2557 (2006); Martel v. Clair, 132 S. Ct. 1276 (2012); Wiggins v. Smith, 539 U.S. 510 (2003); and Harris v. Nelson, 89 S. Ct. 1082 (1969) in support of Claim One.

Respondent argues that Puente has procedurally defaulted Claim One because he "did not fairly present the constitutional dimension of this claim both at trial and then on direct appeal" (Doc. 19 at 12). Respondent notes that Puente's claim on direct appeal concerned "state procedural rules," not a violation of his constitutional rights, and argues that "Petitioner's claim that the state court made an inadequate inquiry under state law does not provide a basis for federal habeas relief." Id. at 12-13.

---

[3] In Faretta v. California, 422 U.S. 806 (1975), the United States Supreme Court held that criminal defendants have a constitutional right to refuse counsel and represent themselves in state criminal proceedings. Under Nelson v. State, 274 So. 2d 256 (Fla. 4th DCA 1973), when it appears to a trial judge that a defendant wishes to discharge his court appointed counsel, the judge should make an inquiry of the defendant as to the reason for the request to discharge.

Indeed, Puente raised a similar claim on direct appeal, but did not rely on any of the United States Supreme Court cases he now offers (Ex. 2 at 23-29).  Rather, the issue raised on direct appeal was "whether the trial court followed the proper procedures in appointing counsel." Id. (citing Williams v. State, 932 So. 2d 1233, 1236 (Fla. 1st DCA 2006)).

For a habeas petitioner to fairly present a federal claim to state courts:

> It is not sufficient merely that the federal habeas petitioner has been through the state courts . . . nor is it sufficient that all the facts necessary to support the claim were before the state courts or that a somewhat similar state-law claim was made. Rather, in order to ensure that state courts have the first opportunity to hear all claims, federal courts have required a state prisoner to present the state courts with the same claim he urges upon the federal courts. While we do not require a verbatim restatement of the claims brought in state court, we do require that a petitioner presented his claims to the state court such that a reasonable reader would understand each claim's particular legal basis and specific factual foundation.

McNair v. Campbell, 416 F.3d 1291, 1302 (11th Cir. 2005) (internal quotations and citations omitted).  As part of such a showing, the claim presented to the state courts "must include reference to a specific federal constitutional guarantee, as well as a statement of the facts that entitle the petitioner to relief." Reedman v. Thomas, 305 F. App'x 544, 545-46 (11th Cir. 2008) (internal

citation omitted).  Because he did not refer to any "specific federal constitutional guarantee" in his brief on direct appeal, Puente's instant constitutional challenge to the trial court's decision not to appoint alternate counsel was not fairly presented to the state court and is unexhausted.  Puente does not satisfy (or even allege) the cause and prejudice, or fundamental miscarriage of justice exceptions to overcome the procedural default of this claim.[4]  Florida's procedural rules and time limitations preclude a second direct appeal.  Fla. R. App. P. 9.140(b)(3) (defendant wishing to appeal a final judgment must do so within "30 days following rendition of a written order").  Consequently, Claim One cannot be considered by this Court and is due to be dismissed.

Even assuming *arguendo* that Claim One is exhausted and raises a federal due process issue, Puente is not entitled to habeas corpus relief. 28 U.S.C. § 2254(b)(2)("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the

---

[4] In his reply, Puente argues that he had the right to effective assistance of counsel, and the trial court's refusal to appoint substitute defense counsel denied him of that right (Doc. 24 at 2).  Whether defense counsel was constitutionally ineffective is a separate inquiry than whether Puente's constitutional rights were violated by the trial court's refusal to appoint alternate counsel.  Puente's ineffective assistance of counsel claims are addressed in the sub-claims raised in Claim Six.

failure of the applicant to exhaust the remedies available in the courts of the State."). None of the cases cited in support of Claim One stand for the proposition that a criminal defendant is entitled to have counsel of his choice appointed for him. In United States v. Gonzalez-Lopez, 548 U.S. 140 (2006), the United States Supreme Court recognized that "the erroneous deprivation of the right to counsel of choice, with consequences that are necessarily unquantifiable and indeterminate, unquestionably qualifies as a structural error." Id. at 149 (quoting Sullivan v. Louisiana, 508 U.S. 275, 282 (1993) (internal quotation marks omitted)). However, "the right to counsel of choice does not extend to defendants who require counsel to be appointed for them." Gonzalez-Lopez, 548 U.S. at 152 (citing Wheat v. United States, 486 U.S. 153, 159 (1988); Caplin & Drysdale, Chartered v. United States, 491 U.S. 617, 624 (1989)).

In the instant case, when Puente became displeased with the questions Counsel asked of witnesses or with the manner in which Counsel was conducting his defense, he informed the trial court (during the State's case-in-chief) that he wanted to dismiss his attorney (T. at 275, 293-94). Puente was clear that he did not wish to proceed without an attorney, and asked the court to appoint a lawyer instead. Id. at 275, 293-94. The trial court asked Puente to explain why he believed Counsel was not performing

adequately, and Puente explained Counsel's alleged deficiencies to the trial court.  Id. at 275-87.  The Court concluded that Puente had "failed to demonstrate any specific omission or overt act on the part of [Counsel] that is a substantial or serious deficiency measurably below that of a competent counsel." Id. at 287.

As noted by the Supreme Court in Gonzalez-Lopez, the right to counsel of choice does not extend to defendants (such as Puente) who require that counsel be appointed for them.  Moreover, a trial court maintains "wide latitude in balancing the right of counsel of choice against the needs of fairness, and against the demands of its calendar." 548 U.S. at 152.  As such, trial courts retain the discretion to "make scheduling and other decisions that effectively exclude a defendant's first choice of counsel."  Id. Implicit in Puente's request for the appointment of different counsel was a motion to continue the trial.  Because such a motion would necessitate delay, the trial court acted within its discretion in rejecting the request.  The decision was neither contrary to, nor an unreasonable application of, Gonzalez-Lopez or any other Supreme Court case; therefore, in addition to being dismissed as unexhausted and procedurally barred, Claim One is denied on the merits.

### b.   Claim Two

Puente asserts that the trial court erred when it allowed Nurse Practitioner Diana Hansell to testify regarding what the victim told her after Puente sexually assaulted her (Doc. 1 at 7). He argues that Hansell's testimony was inadmissible hearsay and that the appellate court incorrectly determined that her testimony was admissible under the medical exception to the hearsay rule. Id. [5]

Respondent argues that this claim is unexhausted and procedurally barred because, when Puente raised it at trial and on direct appeal, he asserted only an error under Florida state-law rules of evidence (Doc. 19 at 25). Indeed, a review of Puente's brief on appeal (Ex. 2) shows that he did not raise a due process claim or even cite any federal cases in support of Claim Two. Because he did not refer to any "specific federal constitutional guarantee" in his brief on direct appeal, Puente's instant constitutional challenge to the admission of the nurse's testimony was not fairly presented to the state court and is unexhausted. Puente does not satisfy (or even allege) the cause and prejudice, or fundamental miscarriage of justice exceptions to overcome the procedural default of this claim. Florida's procedural rules and time limitations preclude a second direct appeal. Consequently,

---

[5] Hansell was the medical professional who examined the victim after the reported sexual assault.

Claim Two cannot be considered by this Court and is due to be dismissed.

Even assuming that Claim Two was exhausted and raises a due process claim, Puente is not entitled to habeas relief. Generally, federal courts do not review a state court's application of state rules of evidence or procedure. See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.  In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws or treaties of the United States."); McCullough v. Singletary, 967 F.2d 530, 535-36 (11th Cir. 1992) ("State courts are the ultimate expositors of their own state's laws, and federal courts entertaining petitions for writs of habeas corpus are bound by the construction placed on a state's criminal statutes by the courts of the state except in extreme cases.").  However, a federal court may grant habeas relief where the error rises to the level of a constitutional violation by "result[ing] in a denial of fundamental fairness." Dickson v. Wainwright, 683 F.2d 348, 350 (11th Cir. 1982) (citing Anderson v. Maggio, 555 F.2d 447, 451 (5th Cir. 1977)).  Furthermore, "the erroneous admission of prejudicial evidence can justify habeas corpus relief if it is 'material in the sense of a crucial, critical, highly significant

factor.'" <u>Anderson</u>, 55 F.2d at 451 (quoting <u>Hills v. Henderson</u>, 529 F.2d 397, 401 (5th Cir. 1976)).

In the instant case, the state prosecutor asked Hansell on direct exam whether she remembered what the victim had told her about what had happened to her on the night she was raped by Puente (T. at 249). The nurse specifically testified that the victim's statements were taken to help her make a medical diagnosis and to help her collect evidence. <u>Id.</u> at 251-52. Counsel made a hearsay objection to Hansell's testimony regarding what the victim had told her. <u>Id.</u> The prosecutor argued that the medical diagnosis exception to the hearsay rule applied. <u>Id.</u> at 250. Counsel countered that, because an interpreter had been used during the medical exam, Hansell's testimony would fall outside of the medical exception to hearsay. <u>Id.</u> Counsel explained that "it may be an exception if it's Ms. Puente telling what happened, but if it's through a third party, then it turns into hearsay." <u>Id.</u> at 251. The trial court, apparently rejecting the prosecutor's argument regarding the medical exception, concluded that the statement was not hearsay at all, but was "offered to rebut an express or implied charge against a declarant of improper influence, motive, or recent fabrication" and overruled the objection. <u>Id.</u> Hansell then relayed the events the victim had told to her regarding the details of the assault. <u>Id.</u> at 252-53.

Hansell's testimony was not the only testimony presented at trial explaining what had happened during the assault.  The victim also testified as to the events that occurred on the evening of the crime at issue, and her testimony was virtually identical to that given by Hansell. (T. at 136-4).  Accordingly, Hansell's testimony was not a "crucial, critical, highly significant factor" in Puente's conviction, and the state appellate court's denial of this claim did not violate due process.[6]  In addition to being unexhausted, Claim Two is denied on the merits. 28 U.S.C. § 2254(d).

---

[6] The Court also notes that the appellate court could have rejected this claim because Hansell's testimony was admissible under Florida law as an exception to the hearsay rule.  As noted, Hansell testified that the victim's statements were taken to help her make a medical diagnosis and help her collect evidence.  Id. at 251-52.  Florida law provides that statements made for the purposes of medical diagnoses or treatment by a person seeking treatment qualify as an exception to the hearsay rule.  See Fla. Stat. § 90.803(4).  That the victim's statements were made to Hansell through an interpreter would not affect the admissibility of the testimony.  See Meacham v. State, 33 So. 983, 983 (1903)("[W]here two parties, speaking different languages, and who cannot understand each other, converse through an interpreter, the words of the interpreter, which are their necessary medium of communication, are adopted by both, and made a part of their conversation, as much as those which fall from their own lips; that the interpretation, under such circumstances, is prima facie to be deemed correct; that in such a case either party, or a third party who hears the conversation, may testify to it as he understands it, although for his understanding of what was said by one of the parties he is dependent on the interpretation which was a part of the conversation; that the fact that such conversation was had through an interpreter affects the weight, but not the competency, of the evidence.").

### c.   Claim Three

Puente contends that the prosecutor made improper comments during closing argument that "so infected [the] trial proceedings that granting habeas corpus is warranted" (Doc. 1 at 8). Specifically, Puente urges that the following statements from the prosecutor constituted fundamental error:

> The prosecutor called Puente manipulative and controlling;
>
> The prosecutor opined that "common sense would tell you when a woman is having their period it's not usually a good time for [intercourse]";
>
> The prosecutor urged that Defendant could have walked away at any time even though Puente testified that he could not have walked away because the victim could have run after him and hit him;
>
> The prosecutor stated that when Puente wants sex, he gets sex;
>
> The prosecutor told the jury that in order to believe the Defendant did not commit sexual battery, the victim "must have had sex with her children or something like that."

(Ex. 2 at 36-37).

Respondent again notes that Puente did not present the constitutional aspect of this claim at the trial level or on direct appeal in the state appellate court, thereby leaving the this claim unexhausted and procedurally defaulted (Doc. 19 at 33). Indeed, a review of Puente's brief on appeal (Ex. 2) shows that he did not

raise a due process claim or even cite any federal cases in support of Claim Three.  Because he did not refer to any "specific federal constitutional guarantee" in his brief on direct appeal, Puente's instant constitutional challenge to the prosecutor's closing argument was not fairly presented to the state court and is unexhausted.  Puente does not satisfy (or even allege) the cause and prejudice, or fundamental miscarriage of justice exceptions to overcome the procedural default of this claim.  Florida's procedural rules and time limitations preclude a second direct appeal.  Consequently, Claim Three cannot be considered by this Court and is due to be dismissed.

Even assuming that Claim Three was exhausted and raises a due process claim, Puente is not entitled to habeas relief.  First, the prosecutor's arguments were not improper under Florida law.  In Ruiz v. State, the Florida Supreme Court noted that "the role of counsel in closing argument is to assist the jury in analyzing [the] evidence, not to obscure the jury's view with personal opinion, emotion, and nonrecord evidence[.]" 743 So. 2d 1, 4 (Fla. 1999).  The Ruiz court explained that "[t]he assistance permitted includes counsel's right to state his contention as to the conclusions that the jury should draw from the evidence."  Id. (citing United States v. Morris, 568 F.2d 396, 401 (5th Cir. 1978).  In other words, the prosecutor is not merely constrained to

reciting the evidence introduced at trial as Puente now suggests; rather, that "[t]he proper exercise of closing argument is to review the evidence and to explicate those inferences which may reasonably be drawn from the evidence." Robinson v. State, 610 So.2d 1288, 1290 (Fla. 1992) (quoting Bertolotti v. State, 476 So.2d 130, 134 (Fla. 1985)).

At trial, the victim testified that on the night of the incident, Puente became angry with her when she stopped paying attention to him so he began screaming at her, pushed her, and grabbed her by the hair (T. at 140). Puente told the victim that he wanted to have sex with her, and when she refused, he pushed her down, pulled down her shorts, and put his penis in her anus. Id. at 141-42. When the victim's young children began hitting Puente, he took her into the bathroom, and over the victim's objection, grabbed her hair and forced his penis into her mouth. Id. at 144. Afterwards, Puente was still very upset and forced the victim to engage in anal sex a second time. Id. When Puente became distracted by a noise in the living room, the victim attempted to climb through the bathroom window, but Puente pulled her back inside by her hair and feet. Id. at 146-47. The victim also testified that Puente had battered her multiple times in the past and "was a very controlling individual." Id. at 452. She testified that she had to do what he wanted her to do. Id. After

Puente was jailed for raping her, the victim testified that he would write numerous letters to her and call her sister's home—attempting to get the victim to drop the charges against him.  Id. at 481.  Given the victim's testimony, the prosecutor's statements regarding Puente's manipulation and control of the victim and that Puente "got sex when he wanted sex" were fair comments on the evidence.

Likewise, the victim testified that she was on her period at the time of the attack and that she had never engaged in anal sex with Puente before (T. 141, 143).  The prosecutor's statement regarding "common sense" and the victim's menstruation was his suggestion of the inference the jury should draw from the evidence—that Puente forced the victim to engage in anal sex because she was on her period.

Puente misstates his own testimony at trial regarding whether he could have left the trailer during his fight with the victim. When Puente was asked by the prosecutor whether the victim prevented him from leaving the trailer, the following exchange occurred:

> Q.   So, you could have left[?]
>
> A.   I could have – I could have left.
>
> Q.   But you chose not to.
>
> A.   Well, I did eventually leave.

> Q. Okay. Before we get there, you were
> saying – I guess you're saying you
> were in fear for your life because of –
> because of her?
>
> A. Never did I say I was in fear for my life,
> never.
>
> Q. Okay. You were – you were afraid of her
> hurting you?
>
> A. I wasn't afraid of my wife hurting me.
> I never said that.
>
> Q. Well, why were you afraid she was going
> to come at you?
>
> A. I wasn't afraid that she was going to
> come at me. She was just coming at me
> to prevent me from leaving. I'm not
> afraid of my wife.

(T. at 565). Puente's own testimony defeats any argument that the

prosecutor misstated the evidence when he suggested that Puente

could have left the residence at any time.

Finally, the prosecutor's final statement was made in the

context of explaining that Puente's theory of defense (that the

victim had taken her young children with her shortly before the

assault in order to engage in sexual relations with another person)

made very little sense:

> The defendant's  story is the defendant's
> story, but if you believe that he was – well,
> he didn't say he was in fear of [the victim]
> but that [the victim] was all over him and
> that somehow he had to – he wanted to leave,
> she wouldn't leave – wouldn't let him leave,
> so somehow she was trying to open the door to
> get him in the bathroom and then somehow she

> decided to go out the window, and yet rather
> than leave he wanted to help her by pulling
> her by the hair.  Use your common sense ladies
> and gentlemen.  What makes more sense?  What
> matches the evidence, the physical evidence?
> And I guess he's alluding to that somehow.  We
> have the dilation of the rectum, so there was
> some kind of penetration of the anus.  I guess
> the allusion is, I thought she fooled around
> my or something or something to that effect.
> So I guess when she went away for that hour
> she must have had sex with her children or
> something like that.  I guess that's the –
> what the defendant's trying to imply.

(T. at 620-21).  Notably, it is clear from the context of the prosecutor's closing argument that the prosecutor did not imply that Petitioner accused the victim of having sexual relations with her children.  Rather, the prosecutor argued that the physical evidence showed that the victim had been anally penetrated and that Puente's confusing testimony on the stand—that the victim left the trailer, along with her children, and then had sex with somebody else shortly before her altercation with Puente—made little sense.  "While a prosecutor may 'not ridicule or otherwise improperly attack the defense's theory of the case,' a prosecutor is permitted to suggest to the jury that 'based on the evidence of the case, they should question the plausibility of the defense's theory.'" Davis v. State, 136 So. 3d 1169, 1203 (Fla. 2014) (quoting Valentine v. State, 98 So.3d 44, 55–56 (Fla. 2012)).

Next, even if the comments were objectionable, improper prosecutorial arguments will not compel habeas corpus relief unless they rendered the defendant's trial "fundamentally unfair." Brooks v. Kemp, 762 F.2d 1383, 1400 (1985) (en banc), vacated on other grounds, 478 U.S. 1016 (1986), reinstated, 809 F.2d 700 (11th Cir.) (en banc), cert. denied, 483 U.S. 1010 (1987).   In making this inquiry, the Court must determine whether the improper comments "were so egregious as to create a reasonable probability that the outcome was changed because of them." Brooks, 762 F.2d at 1403.   A "reasonable probability" is one sufficient to undermine confidence in the outcome.   Wilson v. Kemp, 777 F.2d 621, 623 (11th Cir. 1985).   "If a reviewing court is confident that, absent the improper remarks, the jury's decision would have been no different, the proceeding cannot be said to have been fundamentally unfair." Tucker v. Kemp, 802 F.2d 1293, 1296 (11th Cir. 1986).   In applying this standard, the reviewing court must not consider the prosecutor's comments in isolation.   See Johnson v. Wainwright, 778 F.2d 623, 631 (11th Cir. 1985) (evaluating challenged comments in light of "the rest of the prosecutor's speech").   "In this regard, isolated or ambiguous or unintentional remarks must be viewed with lenity." Brooks, 762 F.2d at 1400. The Court must also consider the lack of an objection in examining the impact of a prosecutor's closing argument, as the omission

"may demonstrate defense counsel's belief that the live argument, despite its appearance in a cold record, was not overly damaging." Brooks, 762 F.2d at 1397 n. 19; see also Davis v. Zant, 36 F.3d 1538, 1551 n. 20 (11th Cir. 1994) ("The failure to object can sometimes serve to clarify an ambiguous record as to whether a particular argument was in fact misleading or prejudicial.").

After a full review of the trial transcript and the closing arguments made by both Counsel and the prosecutor, the Court concludes that the prosecutorial remarks at issue were not prejudicial.  The evidence against Puente was overwhelming—in addition to the victim's testimony and the medical evidence of anal penetration—Puente's sperm was found on the victim's underpants (T. at 401).  In addition to being unexhausted, Claim Three is denied on the merits.

### d.   Claim Four

Puente asserts that his constitutional rights were violated when: (1) the trial court excluded (over objection) testimony from his former girlfriend that Puente could not get an erection while drunk; and (2) he was prevented from impeaching the victim by introducing evidence of the victim's prior inconsistent statement (Doc. 1 at 10).

Once again, Respondent notes that Puente has not exhausted the constitutional aspect of this claim because he did not fairly

present a federal constitutional issue to the state courts and on appeal (Doc. 19 at 46).   Indeed, a review of Puente's brief on appeal (Ex. 2) shows that he did not raise a due process claim or even cite any federal cases in support of Claim Four.   Because he did not refer to any "specific federal constitutional guarantee" in his brief on direct appeal, Puente's instant constitutional challenge to the prosecutor's closing argument was not fairly presented to the state court and is unexhausted.   Puente does not satisfy (or even allege) the cause and prejudice, or fundamental miscarriage of justice exceptions to overcome the procedural default of this claim.   Florida's procedural rules and time limitations preclude a second direct appeal. Consequently, Claim Four cannot be considered by this Court and is due to be dismissed.

Even if Claim Four was not procedurally barred, it is without merit.   As noted, the general rule is that a federal court will not review a trial court's actions with respect to the admission of evidence.   See discussion supra Claim Two; Jacobs v. Singletary, 952 F.2d 1282, 1296 (11th Cir. 1992) ("We review state court evidentiary rulings on a petition for habeas corpus to determine only whether the error, if any, was of such magnitude as to deny petitioner his right to a fair trial.") (internal quotation omitted).   The trial court's exclusion of testimony from Puente's former girlfriend regarding his ability to maintain an erection

when drunk did not render Puente's trial fundamentally unfair. Puente proffered evidence that his former girlfriend had been in a relationship with him ten years prior, and when he drank during their relationship, Puente was unable to obtain an erection when the girlfriend wanted to engage in sex (T. at 490).   The prosecution objected on the grounds of "relevant, speculative, time frame, she's not an expert." Id. at 491.   The trial court determined that whether Puente, while drunk, had been unable to maintain an erection with his girlfriend during consensual sex ten years earlier was irrelevant and not probative. Id.   Given the ten-year difference in time, the different women involved, and the fact that Puente engaged in consensual sex with his former girlfriend (as opposed to forcible rape with his wife of six years), the trial court properly determined that the girlfriend's testimony was irrelevant.

Puente's assertion that he was prevented from impeaching the victim with a prior inconsistent statement is factually incorrect; Counsel merely chose not to do so.   During the cross examination of the victim, she stated that she continued to struggle with Puente after he pulled her from the bathroom window and that Puente then "tried to finish what he was doing" (T. at 166).   Counsel asked the victim, "when you gave that statement to the police you never mentioned anything about any sexual related thing after you

left the bathroom, right?"   Id. at 166-67.   The prosecution

objected, and the following exchange occurred:

STATE:      This is through an interpreter.
            How would she know what she told the
            police[?] She went through a third
            party. I mean he –

COUNSEL:    It's a sworn statement.

STATE:      It isn't signed by her.

COUNSEL.    (Inaudible) just swear her in.

COURT.      Does she write – does she write in
            English?

COUNSEL.    They had a translator asked do you
            swear to tell the truth, the whole
            truth, and nothing but the truth and
            translate it from Spanish to English
            and produce that transcript.
            There's nothing in that transcript
            about what she's testifying to now.

COURT.      Well, if you're trying to impeach
            her with a prior inconsistent
            statement, you need to ask her if
            she – when she gave the interview if
            she told – in her statement did she
            say A, B, and C.

COUNSEL.    Okay.

COURT.      Okay. If she says – this is what
            you want to prove to impeach – if
            she says, yes, I did say that, then
            that's the end of the story. You've
            impeached her. If she says no, I
            didn't say any such thing –

COUNSEL.    You can show her this –

COURT.      Then, well, no. Then – then you can
            introduce extrinsic evidence to

establish that she said something else.

COUNSEL.   Okay.

STATE.   How can you do that when she's translated, Judge[?]

COURT.   He'll have to call –

STATE.   The translator.

COURT.   He'll have to call the translator in this case to – to do that because she can't read this.

COUNSEL.   You're right, she can't read it.

COURT.   And you're going to have the interpreter interpret what's on here for her?  No, that would be asking for even more confusion, right?

COUNSEL.   (Inaudible).

COURT.   Then what the next step, that is if you are able to impeach her with a prior inconsistent statement, then the State would be able to recall her and ask her to explain that statement.   She'd have that opportunity too if we ever get that far today or tomorrow or the next day.

COUNSEL.   (Inaudible).

COURT.   Comprende?

Id. at 168-69.   Although not prevented from doing so, Counsel apparently decided against calling in a translator to impeach the victim regarding whether she had told the police that her struggle

– 34 –

with Puente continued after he pulled her from the window. Instead, Counsel questioned the victim about the nature of her sexual relationship with Puente after he had moved out of the trailer. Id. at 169-71. Accordingly, the trial court's discussion with Counsel regarding the proper procedure to follow if he sought to impeach the victim did not violate Puente's constitutional rights.

In addition to being procedurally barred, Claim Four is denied on the merits.

### e.   Claim Five

Puente asserts that "about" sixteen of the claims raised in his Rule 3.850 motion were erroneously denied as procedurally barred because they "could have and should have been raised on direct appeal" (Doc. 1 at 12). This claim makes little sense. Puente raised only twelve claims in his Rule 3.850 motion (Ex. 5), so it is unclear how sixteen of the twelve could have been dismissed as procedurally barred.[7] Moreover, Puente does not now identify a single claim he believes was erroneously dismissed by the post-conviction court as procedurally barred.

---

[7] In his supporting memorandum, Petitioner merely states that "many" of his claims were dismissed as procedurally barred. However, he still does not identify the allegedly erroneously dismissed claims (Doc. 2 at 14).

Rule 2(c) of the Rules Governing Habeas Corpus Cases under Section 2254 specifies that a petition must:

> (1)   specify all the grounds for relief available to the petitioner;
>
> (2)   state the facts supporting each ground;
>
> (3)   state the relief requested;
>
> (4)   be printed, typewritten, or legibly handwritten; and
>
> (5)   be signed under penalty of perjury by the petitioner or by a person authorized to sign it for the petitioner under 28 U.S.C. § 2242.

Rule 2(c)(1)-(5).  In Mayle v. Felix, the United States Supreme Court explained that a § 2254 habeas petition "is expected to state facts that point to a real possibility of constitutional error." 545 U.S. 644, 655 (2005) (quoting Advisory Committee's Note on Habeas Corpus Rule 4).  These facts must consist of sufficient detail to enable the court to determine, *from the face of the petition alone*, whether the petition merits further habeas corpus review.  See Adams v. Armontrout, 897 F.2d 332, 334 (8th Cir. 1990); see also Beard v. Clarke, 18 F. App'x 530, 531 (9th Cir. 2001) ("Conclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief. . . . Notice pleading is insufficient; the petitioner must state sufficient facts.")(internal citations omitted).  Therefore, the

- 36 -

mere assertion of a ground for relief, without more factual detail, does not satisfy a petitioner's burden of proof or the requirements of 28 U.S.C. § 2254(e)(2) and Rule 2(c) of the Rules Governing Section 2254 Cases in the U.S. District Courts. See Smith v. Wainwright, 777 F.2d 609, 616 (11th Cir. 1985) (holding that a general allegation of ineffective assistance of counsel is insufficient; a petition must allege specific errors in counsel's performance and facts showing prejudice). Accordingly, the Court will not speculate on which claims Puente believes were erroneously dismissed as procedurally barred, and Claim Five is subject to dismissal as insufficiently pleaded.

To the extent Puente now urges that *portions* of his Rule 3.850 motion were not addressed by the post-conviction court because the post-conviction court determined that those portions should have been raised on direct appeal, he fairs no better. In cases where the petitioner has defaulted his federal claim in state court pursuant to an independent and adequate state procedural rule, federal habeas corpus review of the claim is barred unless Petitioner can demonstrate cause for the default and actual prejudice or demonstrate the applicability of the fundamental miscarriage of justice exception. See Coleman, 501 at 748.

In his petition, Puente appears to concede that he defaulted the unidentified claims pursuant to an independent and adequate

state procedural rule.  However, he urges that the claims were not raised on direct appeal because of ineffective assistance of appellate counsel (Doc. 1 at 12).  Although ineffective assistance of appellate counsel *can* operate to provide cause for the procedural default of a claim of trial court error, Puente must have first exhausted the underlying ineffective assistance of appellate counsel claims, which he did not do.  See Edwards v. Carpenter, 529 U.S. 446, 450–51 (2000) (concluding that a federal habeas court is barred from considering a procedurally defaulted ineffective assistance of counsel claim as cause for procedural default of another claim); Hill v. Jones, 81 F.3d 1015, 1029–31 (11th Cir. 1996) (noting that the Supreme Court's jurisprudence on procedural default dictate that procedurally defaulted claims of ineffective assistance cannot serve as cause to excuse a default of a second claim).  Nor has Puente presented new, reliable evidence to support an actual innocence claim.  Schlup, 513 U.S. at 324.  Consequently, Puente's passing reference to ineffective assistance of appellate counsel does not satisfy the cause and prejudice, or fundamental miscarriage of justice exceptions to overcome the procedural default of Claim Five. Florida's procedural rules and time limitations preclude a second direct appeal.  Consequently, in addition to being subject to dismissal

as insufficiently pleaded, Claim Five is both unexhausted and procedurally barred and cannot be considered by this Court.

### f.    Claim Six

Puente asserts that the post-conviction court erred when it denied Grounds two, three, five, six, seven, eight, and ten of his Rule 3.850 motion (Doc. 1 at 13). Puente raised these claims in his Rule 3.850 motion (Ex. 5), and the post-conviction court denied the claims, adopting the state's brief in opposition to the motion (Ex. 7). Florida's Second District Court of Appeal affirmed without a written opinion on the merits (Ex. 8). The affirmance of the post-conviction court's ruling is entitled to deference, and the Court must now determine whether any arguments or theories could have supported the state appellate court's conclusions. Wilson, 834 F.3d at 1235. Each of the claims will be addressed separately.

### 1.    Ground Two (Claim 6(a))

Puente asserts that Counsel was constitutionally ineffective because he conceded Puente's guilt to simple battery during closing argument (Doc. 1 at 13; Ex. 5 at 4). Puente appears to take issue with the following statements made by Counsel during closing:

> [The state] has not met their burden in this particular case, and I ask you to find the defendant not guilty.

> The Judge will also instruct you to what is known as lesser included offenses. If you don't believe that the defendant has committed the offense of sexual battery, and I don't believe the evidence has shown that, the Judge will instruct you that you can find the defendant guilty of a lesser included offense. That lesser included offense is battery. The defendant took the stand and you heard Mr. Puente talk about what happened that particular night, how he grabbed Mr. – Mrs. Puente by the arm, how he grabbed her by the hair. That evidence is consistent with the physical evidence, the photographs that the State showed you regarding the hairs and so forth, the bruise on the back of her arm. We would ask you to find the defendant guilty of what he did which is battery, simply battery.

(T. at 610-11). Notably, Counsel did not concede Puente's guilt to the offenses with which he was charged (sexual battery), but instead argued that the evidence pointed only to the lesser-included crime of simple battery. See Florida v. Nixon, 543 U.S. 175, 187 (2004) (holding that a concession of guilt to a lesser included offense is not the functional equivalent of a guilty plea); McNeal v. Wainwright, 722 F.2d 674, 677 (11th Cir. 1984) (distinguishing that a tactical decision to admit to a lesser offense does not amount to guilty plea without a defendant's consent and the tactical decision does not require a client's consent).

Given the evidence presented at trial (including Puente's own testimony) that Puente *did* grab the victim by the arm and hair (T.

at 517, 518, 522, 523), Counsel's concession was not objectively unreasonable, and there is no reasonable probability that the outcome of the trial would have differed absent the concession. Nixon, 543 U.S. at 189.   Therefore, Petitioner cannot show Strickland prejudice.

Moreover, Petitioner cannot demonstrate deficient performance.  The decision to admit to certain uncontested facts was a tactical one and is entitled to deference.  "[C]ounsel cannot be deemed ineffective for attempting to impress the jury with his candor and his unwillingness to engage in 'a useless charade' [by failing to concede overwhelming of guilt to a lesser included offense]." Nixon, 543 U.S. at 192 (quoting United States v. Cronic, 466 U.S. 648, 656 n. 19 (1984)).   Accordingly, Petitioner satisfies neither prong of the Strickland test.  The state courts' rejection of this claim was not contrary to or an unreasonable application of Strickland, nor was it based upon an unreasonable determination of the facts.  Claim 6(a) is denied as without merit.

### 2.   Ground Three (Claim 6(b))

Puente asserts that Counsel was ineffective for failing to object to the prosecutor's summary of the evidence during closing argument (Ex. 5 at 5-26).  In addition to taking issue with the statements discussed in Claim Three, Puente urges that Counsel should have objected to the prosecutor's final statement that

"[Puente] is guilty and he needs to be held accountable" (T. at 622).   Puente also complains that the prosecutor unfairly solicited the jury's sympathy by repeatedly pointing out that two small children had been present when the victim was sexually assaulted (Ex. 5 at 6-10).[8]

A prosecutor who expresses his personal opinion concerning the guilt of the accused poses the danger that "such comments can convey the impression that evidence not presented to the jury, but known to the prosecutor, supports the charges against the defendant and can thus jeopardize the defendant's right to be tried solely on the basis of the evidence presented to the jury; and the prosecutor's opinion carries with it the imprimatur of the Government and may induce the jury to trust the Government's judgment rather than its own view of the evidence." United States v. Young, 470 U.S. 1, 18 (1985).   Even if the instant statement

---

[8] The post-conviction court, adopting the state's response, denied this claim as procedurally barred on the ground that it should have been raised on direct appeal (Ex. 6 at 6).   The Court disagrees that this claim was procedurally barred; it was parsed in terms of ineffective assistance of counsel, not trial court error.   See State v. Barber, 301 So. 2d 7, 9 (Fla. 1974) (holding that a claim of ineffective assistance of counsel cannot be raised for the first time on direct appeal).   However, this Court need not consider the deference owed to the state court's determination that the claim is procedurally barred, nor need the Court consider the applicability of Martinez v. Ryan, 566 U.S. 1 (2012) to excuse the default, because the claim fails on the merits.   See 28 U.S.C. § 2254(b)(2).

from the prosecutor could be construed as expressing his personal opinion about Puente's guilt, the statement came at the end of a long, detailed summation of the evidence presented at trial. Id. at 611-22. Reasonable competent defense counsel could have foregone an objection to the statement because, when viewed in context of the entire summation, the remarks did not imply that the state had access to evidence outside the record. See Provenzano v. Singletary, 148 F.3d 1327, 1332 (11th Cir. 1998) (noting that counsel's conduct is unreasonable only if petitioner shows "that no competent counsel would have made such a choice"). Moreover, the overwhelming evidence of Puente's guilt eliminates any doubt that the prosecutor's remarks unfairly prejudiced the jury's deliberation.

The statements made by the prosecutor during closing argument regarding the presence of the victim's children at the assault and the prosecutor's other statements regarding the evidence presented at trial were true and were merely a summary of the evidence presented in Court. See Braddy v. State, 111 So. 3d 810, 840 (Fla. 2012) (comments made during closing that "merely summarize[] the evidence introduced at trial" are not improper). Moreover, even if the comments were objectionable, reasonable competent counsel could have concluded that objecting to the inclusion of statements about the children's presence had little chance of

success and would have only directed the jury's attention to the fact that Puente was accused of raping his estranged wife in front of two small children.  Likewise, objecting to the prosecutor's summary of the evidence would have highlighted the damaging aspects of the evidence.  Julius v. Johnson, 840 F.2d 1533, 1537-38 (11th Cir. 1988) (defense counsel's decision not to object to prosecutor's comments during closing argument was a deliberate tactical choice because counsel reasonably believed that objections during closing argument merely focus the jury's attention on the damaging remarks); see also discussion supra Claim Three.

Puente has demonstrated neither deficient performance nor resulting prejudice from Counsel's failure to object to the prosecutor's closing arguments.  Accordingly, Claim 6(b) is denied as without merit.

### 3.  Ground Five (Claim 6(c))

Puente asserts that Counsel was ineffective for failing to properly impeach the victim (Ex. 5 at 30-37).  He generally asserts that essentially every statement made by the victim during her testimony was untrue and that Counsel should have done more research to learn about the victim's past so that he could more effectively question her.  Specifically, Puente claims that Counsel should have: (1) obtained documents from the Department of

Immigration and Naturalization and used them to show who had sponsored the victim's citizenship; (2) found a witness to testify that the victim had taken an English class; (3) been able to get the victim to admit that she was the actual aggressor in the altercation; (4) gotten the victim to admit that the only instances of domestic violence in the past had involved Puente pushing the victim four times; (5) asked the victim whether Petitioner ripped or tore her clothing when he removed it, and if the victim answered "yes," Counsel could have impeached her; (6) "impeached" the victim with her testimony that she had sexual relations with the victim the day prior to the attack; (7) impeached the victim's testimony that she had asked Puente to leave the house because he was irresponsible with her statement during the divorce hearing that Puente was a good father; (8) impeached the victim with her inconsistent statements as to the precise moment her father walked in and witnessed Puente batter the victim; and (9) done a better job impeaching the victim about how many times she had visited him in jail.  Puente also asserts that Counsel should have called more witnesses to testify that he (Puente) was not controlling and to clarify how many times the victim had visited him in jail after the rape.  Finally, Petitioner submits that the state may have

committed a Brady[9] violation by giving the Counsel photocopies of the photographs of the victim's injuries instead of the original photographs. Id.

In denying the first part of this claim, the state post-conviction court adopted the state's response to Puente's Rule 3.850 motion:

> In this subset of eight postconviction claims, the Defendant complains about trivial examples about defense counsel's alleged ineffectiveness. Many of the points he claims were never presented to the jury, were, in fact, presented to the jury. Like the defendant in Blackwood v. State, the Defendant is simply unable to demonstrate that he was deprived of his constitutional right to counsel. 946 So. 2d 960 (Fla. 2006). The Defendant's defense counsel tried to accomplish all that the Defendant insisted of him. The record is rife with instances where defense counsel attempted to impeach the victim with information but the victim would simply not deliver the answer that the Defendant was hoping for. The victim's answers to defense counsel's line of questioning cannot constitute a basis for postconviction relief. The record makes clear that defense counsel's cross-examination of the victim "falls squarely within the range of reasonable professional assistance, particularly where '[j]udicial scrutiny of counsel's performance must be highly deferential.'" Id. at 969 (quoting

_____

[9] In Brady v. Maryland, 373 U.S. 83, 87 (1963), the United States Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."

> Strickland). Like the defendant in
> Blackwood, the Defendant "fails to present any
> instance in which the performance of counsel
> falls to the level of being objectively
> unreasonable, particularly when considered in
> context of an overall strategy." Id.
> Because of the trivial nature of these claims,
> and the speculative connection between these
> alleged instances of ineffective assistance
> and the jury's verdict, these claims should be
> summarily denied.

(Ex. 6 at 16). Florida's Second District Court of Appeal affirmed

(Ex. 8). Puente does not explain how the state courts' denial of

these claims was contrary to Strickland or based upon an

unreasonable determination of the facts.

As noted by the state court, much of this claim makes little

sense, but appears to be based primarily upon Puente's

disappointment with Counsel's attempts to impeach the victim. For

example, when Counsel asked the victim whether she spoke English,

she answered "I understand a little bit." (T. at 154). She told

Counsel that she did not speak "much" English, only "one, two,

three words." Id. at 155. It is unclear why Puente believes that

asking the victim about her English class would have impacted the

weight of her testimony or the outcome of his trial. Nevertheless,

Counsel attempted to impeach the victim on this issue, and she

denied attending an English class. Id. at 453. Likewise, the

victim never testified that her father sponsored her citizenship,

only that he could have done so (T. at 172). The victim admitted

that she had paid several thousand dollars towards obtaining legal immigration status.  Id. at 442.  The victim admitted having sexual relations with Puente two days before the assault (T. at 170), so Counsel could not have "impeached" or on this point. Puente, not the state, elicited the testimony regarding Puente's prior battery of the victim, and the only statement in this regard was the victim's affirmation that Puente had hit her multiple times in the past. Id. at 452.

Puente's claims that better counsel could have gotten the victim to admit that she was the aggressor in the altercation or "tricked" her into lying about the condition of her clothing after Puente removed them are speculative, and warrant no consideration. See Tejada v. Dugger, 941 F.2d 1551, 1559 (11th Cir. 1991) (vague, conclusory, speculative, and unsupported claims cannot support relief for ineffective assistance of counsel).  Likewise, this Court will not consider Puente's claims that uncalled witnesses would have testified in his favor.  Puente's petition is devoid of any evidence that these witnesses would have testified as Puente now suggests. "[E]vidence about the testimony of a putative witness must generally be presented in the form of actual testimony by the witness or on affidavit.  A defendant cannot simply state that the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance claim." United States v.

Ashimi, 932 F.2d 643, 650 (7th Cir. 1991) (footnotes omitted);

accord Dottin v. Sec'y, Dep't of Corr., No. 8:07-CV-884-T-27MAP,

2010 WL 3766339, at *6 (M.D. Fla. Sept. 16, 2010).

Puente fares no better with his argument that the state

committed a Brady violation by failing to insist that the state

provide the original photographs of the victim's injuries.  Puente

raised this claim in his Rule 3.850 motion, and the state post-

conviction court adopted the state's response to the motion (Ex.

7).  The state detailed the requirements to state a viable Brady

claim and denied Puente's Rule 3.850 motion on the grounds that no

violation had occurred.  The state also determined that Puente had

suffered no prejudice from the alleged violation:

> Next, the Defendant claims that defense
> counsel knew the state had committed a Brady
> violation in that the State did not provide
> the original photographs of the victim's
> injuries to the defense.  He states that by
> failing to request a Richardson hearing on
> this alleged Brady violation, prejudiced the
> Defendant because the "actual photographs"
> show less bruising on the victim.  The
> Defendant claims that the State had an
> obligation to provide the original photographs
> to the defense and that the failure to insist
> upon this resulted in the Defendant being
> convicted based on "photographic evidence
> which was admittedly not a fair representation
> of [the victim's] actual physical condition.
>
> The copies of photographs of which the
> Defendant complains are photographs of the
> victim's bruising on the face and body.  The
> photographs do not depict any evidence of the

Defendant anally penetrating her. "There are three components of a true Brady violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." Strickler v. Greene, 527 U.S. 263, 281-82 (1999). "As explained by the United States Supreme Court, a 'showing that the prosecution knew of an item of favorable evidence unknown to the defense does not amount to a Brady violation, without more.' Way v. State, 760 So. 2d 903, 912 (Fla. 2000) (internal citations omitted). The defendant must also show that the evidence was material. "Evidence is material for the purposes of a Brady claim only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. *A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome.*" *Id.* (quoting United States v. Bagley, 473 U.S. 667, 682 (1985). To address the issue of materiality, the correct inquiry is whether "the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." Strickler, 527 U.S. at 290 (internal citations omitted).

The Defendant has failed to demonstrate any of the necessary components of a Brady violation. See section 92.29, Fla. Stat. Moreover, during his testimony, the Defendant admitted to hitting the victim. Challenging the copies of photographs taken by law enforcement would have done nothing to have changed the verdict with regard to the battery. Additionally, a wealth of other inculpating evidence was introduced at trial to prove beyond a reasonable doubt that the Defendant had committed a sexual battery upon the victim.

> For these reasons, this claim should be denied.

(Ex. 6 at 17-18) (emphasis in original) (internal citations to the record omitted). Puente does not explain how the state courts' adjudication of this claim was contrary to Strickland or based upon an unreasonable determination of the facts.

First, the photographs of the victim's injuries were clearly not "suppressed." Counsel was aware that the copies provided by the state were photocopies and not the original photographs (T. at 356). See Provenzano v. State, 616 So. 2d 428, 430 (Fla. 1993) ("There is no Brady violation where the information is equally accessible to the defense and the prosecution, or where the defense either had the information or could have obtained it through the exercise of reasonable diligence."). Next, there is no reason to believe that the photographs were exculpatory—the only testimony about the photographs came from Detective Maran who testified that the printer was not good and "there's like a big line down here that wasn't on my pictures." Id. at 357. Puente does not assert that he has actually seen the original photographs (nor does he provide them to this Court); rather, he merely speculates that the marks that appear to be bruises on the victim "are actually random defects in the poor quality printing/copying" of the photographs in evidence (Ex. 5 at 36). See Wright v. State, 857 So. 2d 861,

870 (Fla. 2003) (holding that there was no <u>Brady</u> violation because the exculpatory effect of the disputed documents was merely speculative); <u>Gore v. State</u>, 846 So.2d 461, 466-67 (Fla. 2003) (holding that the <u>Brady</u> claim was insufficiently pleaded in the rule 3.851 motion because the defendant presented no factual basis that the disputed item ever existed or contained exculpatory information).   Finally, the victim's injuries were described to the jury by Detective Maran, Nurse Hansell, and the victim (T. at 129-51, 246-99, t. at 322-41).   The marks on the victim are barely visible on the photocopies of the photographs attached to the record (Ex. 4 at 146-58).   Accordingly, Puente cannot show how the failure to submit the missing photographs into evidence resulted in prejudice.

Puente has demonstrated neither deficient performance nor resulting prejudice from any of the myriad claims raised in Ground Five of his Rule 3.850 motion.   Accordingly, the state court's rejection of this claim was neither contrary to <u>Strickland</u> nor based upon an unreasonable determination of the facts.   Claim 6(c) is denied as without merit.

### 4.   Ground Six (Claim 6(d))

Puente asserts that Counsel was constitutionally ineffective for failing to object to the use of translators during the investigation of the sexual assault (Ex. 5 at 38-40).   Puente

asserts that "since this case hinged upon credibility of witnesses EVERYTHING in this case, it cannot be said that these errors did not change the outcome of the trial by changing the jury's credibility determination." Id. at 39.

In denying this claim, the state post-conviction court adopted the state's response to Puente's Rule 3.850 motion, and determined that defense counsel had actually objected to the use of third-party translators, and that "any discrepancy concerning the content or reliability of statements translated by an interested or suspect interpreter related to the weight of the evidence and did not bear on its admissibility." (Ex. 6 at 19). Florida's Second District Court of Appeal affirmed (Ex. 8).

Puente does not explain how the state court's denial of this claim was contrary to Strickland or based upon an unreasonable determination of the facts.  Moreover, Puente does not point to a single instance in which he alleges that any interpreter made an incorrect statement.  Accordingly, Puente has not met his burden of demonstrating Strickland prejudice, and Claim 6(d) is denied as without merit.

### 5.    Ground 7 (Claim 6(e))

Puente asserts that Counsel should have objected to, or made a motion to exclude, the State's closing argument regarding Puente's consciousness of guilt (Ex. 5 at 40).  Specifically,

Puente complains that the prosecutor commented that Puente had left the scene of the crime before the police arrived.   Id.

In denying this claim, the state post-conviction court adopted the state's response to Puente's Rule 3.850 motion, and determined that Counsel's performance was not deficient because the state "is permitted to comment on a defendant's actions that indicate his or her consciousness of his or her own guilt." (Ex. 6 at 19).  Florida's Second District Court of Appeal affirmed (Ex. 8).

Puente does not explain how the state courts' determination was contrary to Strickland or based upon an unreasonable determination of the facts.  Therefore, AEDPA deference should be given to the state court's decision.  The state court's ruling is well-supported by the record and by controlling case law, Strickland, and its progeny.  Accordingly, reasonable competent counsel could have decided against objecting to the prosecutor's comments regarding Petitioner leaving the scene of the crime. See Caraballo v. State, 39 So. 3d 1234 (Fla. 2010) (the prosecution is permitted to address a defendant's apparent consciousness of guilt during closing argument).  Claim 6(e) is denied as without merit.

### 6.   Ground 8 (Claim 6(f))

Puente asserts that Counsel should have moved to exclude Nurse Diana Hansell's testimony regarding the victim's rectal dilation

because Hansell was not an expert on rectal dilation and should not have been permitted to testify to her observation of it (Ex. 5 at 42). Puente further asserts, without explanation, that "persons who practice anal sex wherein their anus remains in a constant state of dilation." Id.

Puente raised this claim in his Rule 3.850 motion, and the state post-conviction court adopted the state's response to Puente's Rule 3.850 motion. The court determined that Counsel's performance was not deficient because Hansell "testified as to what she observed of the victim's anus during a medical exam. The witness never purported to be an expert in rectal dilation and testified that she had never seen a dilated anus prior to observing the victim's." (Ex. 6 at 19). The Court noted that, even had Counsel objected, he would have been overruled because. "the witness was testifying as to what she observed and what she, in her experience as a medical practitioner had learned." Id. at 20.

As noted by the post-conviction court, Hansell testified as to what she observed during her examination of the witness. This is allowed under Florida law. See Lewek v. State, 702 So. 2d 527, 531 (Fla. 4th DCA 1997) (witness's eyewitness testimony based upon observation admissible). Reasonable competent counsel could have decided against objecting to the testimony. Puente's argument that Counsel should have objected to Hansell's testimony that a

rectal sphincter will generally close six to eight hours after penetration (T. at 264) is equally unavailing.   By denying Puente's Rule 3.850 motion on the ground that Hansell's testimony was properly admitted, the state court has already told this Court what would have happened had Counsel objected—the objection would have been overruled.   State courts, not federal courts on habeas review, are the final arbiters of state law.   Baggett v. First Nat'l Bank of Gainesville, 117 F.3d 1342, 1353 (11th Cir. 1997).   The state court's conclusion that Hansell's testimony was admissible in its entirety puts to rest any claim that Puente was prejudiced by Counsel's failure to object to it.

Puente has demonstrated neither deficient performance nor resulting prejudice from Counsel's failure to object to Hansell's testimony.   Accordingly, the state courts' rejection of this claim was neither contrary to Strickland nor based upon an unreasonable interpretation of the facts. Claim 6(f) is denied on the merits.

### 7.   Ground Ten (Claim 6(g))

Puente asserts that Counsel was constitutionally ineffective for asking Detective Maran if the victim's injuries were consistent with her getting stuck in the bathroom window when she tried to escape (Ex. 5 at 47).   Puente urges that Counsel was incompetent because Detective Maran answered that the victim's injuries were not consistent with injuries received from getting stuck in a

window, and had Counsel not asked the question, the outcome of his trial would have been different.   Id.

Puente raised this claim in his Rule 3.850 motion, and the post-conviction court adopted the state's response, which noted that Puente could not demonstrate Strickland prejudice merely from a single question (Ex. 6 at 20).  Puente does not explain how the state courts' conclusion was contrary to Strickland or based upon an unreasonable determination of the facts.

Detective Maran initially testified that the injuries on the victim were inconsistent with getting stuck in a window because "the injuries would be in that area [of the body] where she was stuck trying to wiggle in or out." (T. at 358).  However, when pressed by Counsel, Detective Maran admitted that she did not know what part of the victim's body was stuck in the window.   Id. Accordingly, Counsel effectively diffused any impact of Detective Maran's testimony on this issue.   The state court did not unreasonably conclude that Puente suffered no prejudice from this question, and Claim 6(g) is denied on the merits.

### g.   Claim Seven

Puente asserts that there was a conflict of interest between Puente and Counsel "which resulted in counsel abandoning this case and even becoming an adversary to the defense." (Doc. 1 at 16). Although this claim appears to a mere rambling re-hash of Puente's

considerable displeasure with the quality of his defense, he appears to make the incredible assertion that Counsel was ineffective because he acceded to Puente's demands to proceed in certain ways. See, e.g., Ex. 5 at 48 (complaining that Counsel opened the door to Defendant's prior bad acts merely because Petitioner insisted that he do so). Counsel does not demonstrate constitutionally ineffective assistance by complying with his client's wishes. See Sims v. State, 602 So. 2d 1253. 1257-58 (Fla. 1992)("[W]e do not believe counsel can be considered ineffective for honoring the client's wishes."); Reed v. State, 875 So. 2d 415, 435-36 (Fla. 2005) (a petitioner cannot complain in post-conviction proceedings that his defense counsel followed his directions). Moreover, the Court has reviewed the entire transcript of Puente's trial, and does not find a single instance of constitutional ineffectiveness. Finally, the Court concludes that the overwhelming evidence of Puente's guilt precludes a finding that he suffered Strickland prejudice from any of Counsel's alleged shortcomings. Claim Seven is denied on the merits.

Any of Puentes' allegations not specifically addressed herein have been found to be without merit.

## IV.  Certificate of Appealability[10]

Puentes is not entitled to a certificate of appealability. A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1).  Rather, a district court must first issue a certificate of appealability ("COA").  "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing, Puente must demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" Miller-El, 537 U.S. at 335-36. Puente has not made the requisite showing in these circumstances.

Because Puentes is not entitled to a certificate of appealability, he is not entitled to appeal in forma pauperis.

Accordingly, it is hereby **ORDERED AND ADJUDGED** as follows:

---

[10] Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, the "district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Id. As this Court has determined that Petitioner is not entitled to habeas corpus relief, it must now consider whether Petitioner is entitled to a certificate of appealability.

1.    The Florida Attorney General is **DISMISSED** as a named Respondent.

2.    Claims One through Four of the 28 U.S.C. § 2254 petition for habeas corpus relief filed by Abel Puentes (Doc. 1) are dismissed as unexhausted or, alternatively, denied on the merits; Claim Five is dismissed as insufficiently pleaded; the remaining claims are denied on the merits.   This case is dismissed with prejudice.

3.    Puentes is **DENIED** a certificate of appealability.

4.    The **Clerk of Court** is directed to terminate any pending motions, enter judgment accordingly, and close this case.

**DONE** and **ORDERED** in Fort Myers, Florida on this __19th__ day of July, 2017.

JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE


SA: OrlP-4
Copies: All Parties of Record